Good morning, ladies and gentlemen. Our first case for argument this morning is Cannon v. Filip. Mr. Parr. Good morning, Your Honors, and may it please the Court, Keith Parr for Buchanan, Ingersoll, and Rooney for Mr. Cannon, Antron Cannon. This case gives this Court the opportunity to restore Antron Cannon's rights to have a jury of his peers decide his civil rights claims. I want to focus on three things. First, the material facts that should have been credited in Antron's favor under the Tolan v. Cotton case, 572 U.S. 650-657-659. The second thing I'd like to focus on is why it is important that a jury hear Antron's case. And the third thing I'd like to focus on is who would be on that jury. To begin with, the warrantless entry into his home. The summary judgment standard requires Antron and Sarah Taylor's testimony to be credited. Their testimony is consistent. Just like in the Tolan v. Cotton case, the Tolan and his mother's testimony were consistent. There is a factual dispute. It should have gone to a jury. Factual dispute about what, concretely? Okay, concretely, both Antron and Sarah testified that they were naked in Antron's house, that they heard knocking, but that neither of them answered the door. They testified that they were having consensual sex when they heard the knocking. Why is any of that material? The question facing the officers when they come in is what they know. So what material dispute is there about what the officers knew? What the officers knew is different depending on which officer it is. They received CAD notes, but not all of them, if any of them, actually heard the 911 tape. One of the officers testified that why is that material? There's a doctrine of collective knowledge for police response to any call. The question is whether the officers behaved reasonably in light of the facts known to them. So you need to identify a material dispute about what facts they knew that would draw into question whether their behavior at the time was reasonable. You need to focus on that, counsel. Yeah, the argument that the defendants have made is that there were exigent circumstances. There were not exigent circumstances, and that is a fact issue for a jury. Antron and Sarah were having consensual sex. You need to focus on what they knew at the time and not what the plaintiffs said later. But Grandchamp testified that the CAD notes were insufficient to support exigent circumstances. So what they knew is they were in the curtilage outside of his house. It was dark. It was a nighttime, warrantless entry into the home. It was dark at the time. What did they know? They knew nothing. If what got them there, which was a swatting call, isn't sufficient, then they knew nothing when they were outside the home. Counsel, what is your support in the record specifically that this was a swatting call? Because I listened to the 911 calls with the aunt and the cousin, and they sounded really concerned about the woman who they thought was being beaten in that home. The testimony is unequivocal that Antron and his cousin had an argument, a heated argument. The cousin, I don't even know his last name, the cousin left the home, and we don't know exactly what time he left the home. But that is a swatting call. So it's speculation on your part. No, no. It's something that a reasonable jury should be allowed to consider to determine what was the basis for the phone call. When the dispatcher asked the aunt what his name was, she didn't even know her own nephew's last name. I want to direct you back to Judge Easterbrook's questions, because irrespective of what the cousin's motive was, there were the calls, right? And the officers didn't know if the two had fought earlier. They have to go on their reasonable belief. So why does that even matter what the cousin's motive was? Well, they need to do an investigation. But doesn't the accident circumstances doctrine state that police can't meditate on whether something, they can't meditate on whether this was a swatting call or not when they have information that a woman is being beaten? They can go get information. They could have contacted, no police officer contacted the cousin. No police officer contacted the cousin. The dispatcher did, though. The dispatcher did, and the cousin said that he wanted to remain anonymous, that he did not want to get involved, that he couldn't give permission to enter the home, and that he was talked into it by the dispatcher. And so you're not disputing the material facts that by the time the officers responded, the officers on the ground had information that there was a domestic violence incident going on, and a family member was concerned. They had hearsay. You're not disputing that material fact. You're just saying that for exigent circumstances. For exigent circumstances, that's a separate thing, and that's what a jury should decide. The jury decides exigent circumstances? Yes, it should go to a jury. The facts surrounding the circumstances should go to a jury. Yes. The Civil Rights Act of 1871 was enacted to protect individuals who were being harassed, and sometimes by local officials. It was passed in the Reconstruction era after the Civil War, and Antron is an African-American man. Sarah was, she appears to be Caucasian. The decision that was made by these officers, I mean, after they entered the home and they saw that they were naked and having consensual sex, why didn't they leave? I would have left. Maybe, you know, I think if you did a poll of a jury, I think a lot of other people would have left. They wouldn't have done what these officers did. They wouldn't have put handcuffs behind him, without pants on, had a female officer standing right at him, looking at him. They wouldn't have done that. They wouldn't have taken, had another officer come 20 minutes later, take her outside and bring her inside, take her top off, take nude frontal pictures of her breasts, which showed no injury, they wouldn't have done that. Why isn't that a material fact? Because it is. They had paramedics, they called paramedics to the house. What did the paramedics do? They evaluated Antron. They didn't evaluate her. If she was a victim, why wouldn't you have the paramedics look at her? I think that's important. I think a jury would find it important. And who would be on a jury? I will tell you that it's likely that people that would be on the jury would not be people that wanted this to happen to them. I'll yield. Thank you, Mr. Parr. Mr. Kujawa. Good morning. May it please the court. My name is Michael Kujawa on behalf of the defendants at Lee's, City of Aurora, and officers Phillip Grandchamp, Driscoll Pineda, Rodriguez, and Howe. This court should affirm the district court's grant of summary judgment in this case because the district court was correct. There are no issues of necessary material fact. And counsel's argument here just underscores that because all of the arguments that he is making are about extraneous, immaterial, and unnecessary facts to the actual issues that the district court was deciding in this case, which is exigent circumstances and probable cause. The undisputed facts, material facts, that are necessary shows that there was clearly exigent circumstances that existed for these officers when they got to that house to justify the warrantless entry into that house. And just as clearly, those officers had probable cause to arrest Mr. Cannon based upon what they learned after they got into the house and the statements made to them by the victim in this case. So what are those exigent circumstances? And first off, counsel talks about the Civil Rights Act and harassment and it was designed to stop people from being harassed. No one was being harassed in this case. The Aurora Police Department didn't go there uninvited or uncalled. They were called to this house by plaintiff's own family members. It was his Aunt Ray, based upon information she received from his cousin Jonathan, who had been in the house shortly before the call was made, who called to report this incident. And what did our officers know at the time that they got to that front door? They had heard the 911 call and the information from Aunt Ray, who was not an anonymous caller, by the way, who gave her name and identified herself as someone who had a family relationship with the individual that she was calling on. But she said that Mr. Cannon had lost his mind, that he was drunk and violent, and that he was beating up a woman in the house. When they got there, they heard yelling from inside the house. Whether that is yelling during some type of consensual sex or not is immaterial. They still heard the yelling and that matches up with what they're hearing in this 911 call, the facts that they received from that family member who identified herself. And then someone talks to one of the neighbors and says that no one has left the house since they've been out there. Once again, another fact which would lead them to believe that the individuals who have been reported in that house and involved in this domestic violence incident are still within that house. The 911 call alone is enough when we have an identified family member who's making the report. And none of it is hearsay for an exigent circumstances analysis or a probable cause analysis. And so they clearly had exigent circumstances which existed to justify their warrantless entry in the house. The only disputed fact that might even be considered material is the testimony of a couple of officers who said, Cannon, when they knocked on the door, after a while, Cannon opened the door, yelled some things at him, and told him to get a warrant and slammed the door. Cannon, of course, and the victim dispute that. But that is not a material fact because, as Judge Cannelli looked at, he said, if there's a disputed fact, I'm going to put that in. And so throw that one to the side. If Cannon never answered the door, the exigent circumstances still existed based upon all of the collective knowledge of those officers on the scene at the time. Then let's get to the probable cause. So probable cause is clearly there based upon the interview done of the victim who says that he was choking me to death, that he hit her and bit her, that he would not let her leave the house, and that she thought he was going to kill her. Now, when she gave her deposition testimony months, if not years later, did she tell a different story? Sure she did, but we have video and audio of her statement given to the police that night. And that statement clearly demonstrates and establishes probable cause to make the arrest of Mr. Cannon in this case. So Judge Cannelli got it correct when he determined that there were no necessary material facts that exigent circumstances existed and that there was probable cause to arrest Mr. Cannon. The only remaining issue before this court is the assessment of costs against Mr. Cannon. And Mr. Cannon's argument essentially says I'm an indigent plaintiff who filed this case pro se and it was represented by appointed counsel and it would be inherently unfair to award costs against me. I'm not privy to what communication or what information was given to Mr. Cannon, what the consequences or ramifications might be of someone who files a lawsuit and is not the prevailing party and what the statutes are regarding costs. But Mr. Cannon brought this suit. He had his opportunity to litigate it fully. There is no merit to it and the rules apply to him as a pro se litigant just as they do to anyone else. And so just like the grant of summary judgment that Judge Cannelli awarded to the defendants in this case, the award of costs should be upheld as well by this court. Unless the court has any questions of me, I will conclude my argument. Thank you. Thank you, counsel. Anything further, Mr. Parr? Yes, Your Honor. The right, as I said before, to determine the facts is for a jury. Counsel conceded that there is a factual dispute about what took place at the house. So they testified or said in a supplemental incident report that Mr. Cannon opened the door, yelled at them, told them to get off his property and to get a warrant. He testified and Sarah Taylor testified that neither of them answered the door and neither of them did that. There was no yelling and screaming. And the best testimony that they have about yelling and screaming is that they don't know who was saying what. They didn't say anything about her screaming, nothing at all about her screaming. Thank you, counsel. You'll get it. Thank you. The case is taken under advisement.